### THE STATE v. MELTON, *Appellant.*

1. **Practice, Criminal:** MURDER: DEFENDANT'S RIGHT TO LIST OF JURORS. A party charged with murder in the first degree is not, under the statute, (Wag. Stat., p. 1102, §§ 7, 8,) entitled to be furnished, forty-eight hours before his trial, with a list of forty jurors who have been found by the court to be qualified to sit as such in his case, but only with a list of the panel summoned by the sheriff.

2. **Murder:** DELIBERATION is an essential element of the crime of murder in the first degree.

*Appeal from Scott Circuit Court.*—HON. D. L. HAWKINS, Judge.

*Marshall Arnold* with *Kitchens* and *Watkins* for appellant.

*J. L. Smith*, Attorney-General, for the State.

HENRY, J.—The sheriff's return to the *venire facias* showed that he had summoned forty good and lawful men from the body of the county of Scott to serve upon the panel to try this cause, and that a list of the panel was furnished to the defendant. He demanded that a list of the forty who had been passed upon by the court as qualified to sit as jurors on the trial of this cause should be delivered to him forty-eight hours before the trial commenced. This demand the court refused. Secs. 7 and 8, Wag. Stat., p. 1102, are the same as Secs. 7 and 8 of the statute of 1855 concerning practice in criminal cases, and in the case of the *State v. Buckner*, 25 Mo. 168, this court construed those sections, and held that the accused was only entitled to a list of the panel of forty jurors summoned by the sheriff. This decision was rendered in 1857, and has ever since been acquiesced in, and we are not inclined at this late day to disturb it. The object of the statute in requiring the prisoner to be furnished, forty-eight hours before the commencement of the trial, with a

list of the panel, was to enable him judiciously to make his challenges. In the *State v. Buckner* the court seems to have taken that view of the statute, but how it assists the accused in making his challenges we cannot conceive. Every one of the forty may, on the *voire dire*, be found incompetent to sit as a juror in the particular case. He cannot make his peremptory challenges until forty have been found competent to sit as jurors, from whom twelve are to be selected, and it is not at all improbable, in trials for murder, that not one of the original panel will be of the panel finally selected. If the statute is intended to confer a substantial benefit upon the accused, the language employed fails to secure it, and the construction it has received makes the delivery of a list of the panel forty-eight hours before the trial an idle ceremony. Forty men are held for days in attendance upon the court, every one of whom may be found incompetent and be discharged at the expiration of that time, whereas, if examined as soon as they answer to the summons, those found incompetent could be at once discharged, and only those found competent detained. But the law is otherwise, and the point must be ruled against the appellant.

The defendant was indicted and tried for murder in the first degree. In the third instruction for the State the court declared that if defendant willfully, premeditatedly, and of his malice aforethought shot and killed Riggins, he was guilty of murder in the first degree. The statute defines murder of the first degree to be one committed "by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing," and it is strange that, in the face of the statute, the word "*deliberately*" was omitted from the instruction. In the Wieners case (66 Mo. 13) we endeavored to state the distinction between the two degrees of murder, and, if we are correct in our views, this third instruction for the State declares that to be murder in the first which is but murder in the second degree. But regardless of any decis-

2. MURDER: deliberation.

ion of this court, in the statutory definition of murder in the first degree, deliberation is one of the elements of the crime, and any instruction is fatally defective which declares a homicide, committed *without* deliberation, to be murder of the first degree. It may be contended that this error was cured by other instructions which correctly defined murder of the first degree. We might listen to such an argument in a civil action or in a prosecution for a misdemeanor, but in a case involving the life of a human being it can have but little weight. It is very probable that the verdict of the jury would have been the same if this instruction had not been given; but if there is a bare possibility that, but for this instruction, the verdict would have been different, the judgment should be reversed. It is impossible for this court to say what influence an instruction so palpably erroneous had upon the minds of the jury, and, therefore, the only safe course is to reverse the judgment and remand the cause. Other errors have been assigned, and are relied upon for a reversal of the judgment, but as the defendant has been sentenced to be hanged on the 21st inst., we have not thought it advisable to delay our decision in order to consider the other questions presented by the record. The judgment is reversed and the cause remanded.

REVERSED.